UNITED STATES BANKRUPTCY COURT
NORDHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Case No. 24-10531(REL) |
| Prime Capital Ventures, LLC, | ) |
| | ) Chapter 11 |
| Debtor. | ) |
| | ) |

## DECLARATION OF PAUL A. LEVINE REGARDING THE DEBTOR'S ASSETS AND OPERATIONS AND IN SUPPORT OF THE CHAPTER 11 PETITION AND INITIAL PLEADINGS

Pursuant to 28 U.S.C. § 1746, Paul A. Levine hereby declares and states as follows:

1.   On January 24, 2024, I was duly appointed as the permanent receiver (the "Receiver") of Prime Capital Ventures, LLC (the "Debtor") by the United States District Court for the Northern District of New York (the "District Court"), and was vested with, among other things, exclusive dominion and control over all of the assets, books and records, operations and business affairs of the Debtor. *See Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC et. al.*, Case no. 24-cv-00055 [Docket No. 56] (MAD/DJS) (N.D.N.Y 2024) (the "District Court Order").[1] In addition, I am an attorney in good standing in the State of New York, and a Member of the law firm Lemery Greisler LLC.

2.   I submit this Declaration (a) in support of Debtor's petition for relief under chapter 11 of the United States Code (11 U.S.C. § 101 *et seq*., the "Bankruptcy Code"), filed on the date hereof, (b) in support of the relief that the Debtor has requested in certain motions and applications to be filed with the Court (collectively, the "Initial Motions"), and (c) to assist the Court and other interested parties in understanding the circumstances that compelled the commencement of this chapter 11 case.

---

[1] A copy of the District Court Order appointing me as the permanent Receiver is attached hereto as ***Exhibit A***.

17783949.5

3. I anticipate that shortly after the Petition Date (defined below), I will be, by and through counsel and professional assistance, investigating and pursuing an organized and expansive bankruptcy and litigation initiative to pursue avoidance actions and other claims against third parties and the liquidation of the Debtor's other assets such as real estate, a valuable watch[2] and loan receivables all with the goal of (i) maximizing the recovery for all creditors of the Debtor, including those creditors that, as set forth below, were defrauded by the Debtor, (ii) developing and implementing a fair and equitable claims and distribution process pursuant to a chapter 11 plan of liquidation, and (iii) reducing the litigation risk and significant costs of defending a significant number of claims by defrauded creditors in various state and federal courts.

4. The precipitating cause of the filing of this case at this time is the need to commence chapter 11 proceedings within the 90 day preference period under Code §547 in order to be able to avoid the judgment of B and R Acquisition Partners LLC and JHM Lending Ventures LLC against the Debtor for $4,300,000 which was domesticated as a lien against the Debtor's luxury home located in Virginia Beach, Virginia on February 28, 2024. As explained below, the home was purchased by the Debtor, for cash, in January 2023 for $3,750,000 and represents a major asset of the estate which the Debtor should sell for the benefit of all of its creditors; and not just two of its creditors.

5. This bankruptcy and litigation strategy will include the commencement of potentially dozens of adversary proceedings against certain parties who received fraudulent or preferential payments from the Debtor prior to the Petition Date, as well as the pursuit of claims against certain third parties involved in the fraud perpetuated by the Debtor.

---

[2] The watch was purchased by Prime for $2,275,000 and is in the Receiver's possession in a safe deposit box at a local bank.

17783949.5

6.      I respectfully submit that the breathing spell afforded by the automatic stay, the ability to commence multiple avoidance actions under the Bankruptcy Code, the efficiency of the claims administration process under chapter 11, the utility of section 363 sales, and the transparency of the proceedings before the Bankruptcy Court, are all in the best interests of the Debtor, its estate, and creditors.

7.      A bankruptcy case is the only practicable means for the orderly recovery and liquidation of the Debtor's significant assets and subsequent fair and equitable treatment of all of its creditors.

8.      Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein based on my review of relevant documents, my discussions with interested parties, or based upon experience, knowledge, and information concerning the Debtor.  If called upon to testify, I would testify competently to the facts set forth in this Declaration.  It should be noted, however, that I have not received complete cooperation from the Debtor's principal Kris Roglieri who, upon information and belief, is under criminal investigation by federal authorities and, as result, his willingness to be forthcoming makes my investigation into the Debtor's affairs far from complete.  The petition and schedules and statements that will be filed in this case are based on the best information available at this time and may, despite good faith efforts, contain inaccuracies or omissions, all of which are unintentional.

**BACKGROUND**

9.      On May 14, 2024 (the "Petition Date"), I filed a voluntary petition on behalf of the Debtor for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of New York (the "Court"), commencing the Debtor's chapter 11 case (this "Chapter 11 Case").

17783949.5

10. On January 24, 2024, the District Court appointed me to act as the permanent Receiver with, among other things, exclusive dominion and control over all of the assets, books and records, operations and business affairs of the Debtor.[3] Accordingly, under my control, the Debtor is a debtor-in-possession pursuant to Bankruptcy Code sections 1107 and 1108. I continue to manage the Debtor's affairs. No request for a trustee or examiner has been made in this Chapter 11 Case, and, as of the date of this Declaration, no official committees have been appointed or designated.

11. The Debtor is a Delaware limited liability corporation formed on December 14, 2021, with its principal place of business formerly located at 66 South Pearl Street, 10th Floor, Albany, New York 12207.

12. An individual by the name of Kimberly Humphrey is allegedly the Executive Vice President of the Debtor. The Debtor has no employees, and its business associates are all independent contractors.

13. To the best of my knowledge, the Debtor has no leased premises and no equipment.

14. The Debtor's sole member is Kris Roglieri, who is a resident of the State of New York. Mr. Roglieri is currently the debtor in a pending Chapter 11 Subchapter V bankruptcy case before the Bankruptcy Court bearing case number 24-10157 (the "Roglieri Bankruptcy Case").

15. Prior to the commencement of this case, on December 19, 2023, an involuntary chapter 7 bankruptcy case was filed against the Debtor by petitioning creditors Compass-Charlotte

---

[3] In addition to the Debtor, I was also appointed as the Receiver for non-debtors Berone Capital Fund, LP, Berone Capital Partner, LLC, Berone Capital LLC, Berone Capital Equity Fund I, LP and 405 Motorsports LLC f/k/a Berone Capital Equity Partners, LLC (collectively, "Berone") are named as defendants in *Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC et. al.*, Case no. 24-cv-00055 (MAD/DJS) (N.D.N.Y 2024). As of this date, I am still investigating Berone's involvement in the matters described in this Declaration although that investigation has been hampered by a stay imposed by the District Court pending the outcome of an appeal of the January 24, 2024 order.

17783949.5

1031, LLC ("Compass"), 526 Murfreesboro, LLC ("526 Murfreesboro") and Newlight Technologies, Inc. ("Newlight") (and together with Compass and 526 Murfreesboro, the "Petitioning Creditors").  *See In re Prime Capital Ventures, LLC*, 23-11302 (REL) (Bankr. N.D.N.Y.) [Docket No. 1] (the "Involuntary Case").

16. Upon separate motions to dismiss filed by both the Debtor and the Petitioning Creditors, the Court dismissed the Involuntary Case on January 9, 2024.  *See* Involuntary Case, Docket No. 87.  This Court retained jurisdiction with respect to certain unresolved matters including:

   a. An application by the Alleged Debtor pursuant to Bankruptcy Code § 303(i) for costs, attorneys' fees and damages, including punitive damages;

   b. The Debtor's application for a bond;

   c. The Interim Trustee's application to employ counsel together with compensation of counsel;

   d. All matters pertaining to a $5,000,000 deposit into the Alleged Debtor's KeyBank account no. xxxx2233; and

   e. Bankruptcy Rule 2016(b) disclosures by the attorneys representing the Alleged Debtor in the Involuntary Case.

## BANK ACCOUNTS

17. The Receiver's primary banking relationship is with M&T Bank ("M&T").  Prior to the Receiver taking control of the Debtor's assets, the Debtor had accounts at other banking institutions, some of which have already been closed and some of which are still open. Specifically, the Receiver utilizes the following accounts to receive, hold and distribute funds on

behalf of the Debtor (collectively, the "Bank Accounts"), each of which are described in more detail below:

| Account Name | Depositary Institution | Last four digits of account number | Account Balance |
|---|---|---|---|
| PCV KeyBank Account[4] | KeyBank | x2233 | $2,000 |
| PCV Citibank Account[5] | Citibank | x6945 | $751,385.21 |
| Money Market Account (Savings) | M&T Bank | x5959 | $1,122,914.36 |
| Checking Account | M&T Bank | x6607 | $0 |
| Segregated Account[6] | M&T Bank | x7548 | $100,126.02 |

## APPARENT FRAUDULENT SCHEME

18.     Prior to the Petition Date, the Debtor was purportedly engaged in the business of commercial financing and lending, primarily with respect to, among other things, real estate projects. The Debtor entered into several commitments to fund non-recourse, asset-backed lines of credit whereby the borrower would pay the Debtor an interest credit account payment (each, an "ICA"). As set forth in greater detail herein, it is apparent that the Debtor was accepting these ICAs but failing to advance the agreed upon financing. Instead, the ICA's, were being used to support Mr. Roglieri's lavish lifestyle.

---

[4] I am in the process of transferring the entire balance of this account to my checking account with M&T Bank.
[5] Citibank has frozen the account and has previously stated it will not turn over the funds pending resolution of certain matters before the District Court. If necessary, I will seek turnover pursuant to section 542 of the Bankruptcy Code.
[6] The Segregated Account was opened to hold $100,000 that was remitted to the Receiver in accordance with this Court's order in the Roglieri Bankruptcy Case. *See* Roglieri Bankruptcy Case, Docket No. 108. The funds in the Segregated Account represent a disgorged retainer paid, using the Debtor's funds, to Mr. Roglieri's proposed special criminal counsel in the Roglieri Bankruptcy Case.

17783949.5

19. Through my investigation to date, I have identified nearly a dozen instances where the Debtor accepted an ICA, but either partially or completely failed to advance the agreed financing. Attached hereto as **Exhibit B** is a summary of ICA deposits of third-party borrowers.

20. Additionally, through my investigation and inspection of the Debtor's bank records, there appear to be over 50 other transactions that might be fraudulent ICAs received by the Debtor. Attached hereto as **Exhibit C** is a summary of potential other ICA deposits of third-party borrowers. I anticipate that early in the Chapter 11 Case, I will be seeking the authority to issue subpoenas to third parties to further investigate these transactions.

21. To date, based on my review of bank statements and wire transfer records, I have identified approximately $183,003,124 in potential ICA deposits, wherein approximately $57,635,928 have been returned to third-party borrowers.

22. Through my investigation, I have discovered that a significant portion of the ICA payments were converted and used to purchase luxury vehicles, watches, jewelry, and antiques for Mr. Roglieri or other third-parties and to purchase private air travel. My investigation into the use of ICA payments is continuing.

23. Based on my review of the KeyBank and Citibank bank records, as well as other relevant documents, below is a summary of some of the luxury purchases made with Debtor funds (that I have thus far been able to identify):

Purchases or Expenditures that Appear related to Vehicles:[7]

| DATE | AMOUNT OUT | AMOUNT IN | BANK | PAYEE |
|---|---|---|---|---|
| 10/16/22 | $148,688.79 | | KeyBank | AI Design |
| 11/30/22 | $218,447.96 | | Citibank | Cars USA Shipping |
| 12/9/22 | $88,247.39 | | Citibank | Capital Ford Inc. |
| 12/12/22 | $2,344,454.00 | | Citibank | Scott Oliver Law |

---

[7] Debtor is a collector of luxury sports cars. A detailed online video showing the many cars in his collection can be viewed here: www.youtube.com/watch?v=Fm_p8upe_S8 and some of his cars appear to be individually listed at https://exclusivecarregistry.com/collection/teamloansharks/cars.

17783949.5

| DATE | AMOUNT OUT | AMOUNT IN | BANK | PAYEE |
|---|---|---|---|---|
| | | | | (Purchase of Mercedez Benz AMG) |
| 12/15/22 | $10,705.48 | | KeyBank | AI Design |
| 12/27/22 | $16,500.00 | | KeyBank | RENNtech Inc. |
| 1/12/23 | $129,241.89 | | Citibank | AI Design |
| 2/3/23 | $108,001.77 | | KeyBank | AI Design |
| 2/16/23 | $97,537.50 | | KeyBank | AI Design |
| 2/28/23 | $3,811,000.00 | | Citibank | Bonhams Butterfields Trust |
| 3/13/23 | $93,544.34 | | Citibank | AI Design |
| 4/25/23 | $3,500.00 | | KeyBank | Rockland Auto |
| 4/27/23 | $1,000,000.00 | | Citibank | RM Auctions Inc. (RM Sotheby's) |
| 5/3/23 | $306,800.89 | | Citibank | AI Design |
| 5/15/23 | $1,000,000.00 | | Citibank | RM Auctions Inc. (RM Sotheby's) |
| 5/16/23 | $7,500.00 | | KeyBank | Rockland Auto |
| 5/16/23 | $35,251.00 | | Citibank | CFR Classic LLC |
| 6/6/23 | $62,456.97 | | KeyBank | AI Design |
| 6/7/23 | $304,744.49 | | KeyBank | AI Design |
| 6/27/23 | $46,342.66 | | KeyBank | AI Design |
| 6/28/23 | $203,689.89 | | KeyBank | AI Design |
| 8/25/23 | $228,630.21 | | KeyBank | AI Design |
| 9/13/23 | | $778,364.62 | KeyBank | RM Auctions Inc. (RM Sotheby's) |
| 9/15/23 | $20,000.00 | | KeyBank | Hunter Motorsports |
| 9/18/23 | $37,780.89 | | KeyBank | AI Design |
| 10/23/23 | $77,782.24 | | KeyBank | RENNtech Inc. |
| 10/24/23 | $449,672.93 | | KeyBank | Keeler Motor Car Co |
| 11/2/23 | $91,206.00 | | KeyBank | Keeler Motor Car Co |
| TOTAL: | $10,941,727.29 | $778,364.62 | | |

**Purchases Related to Luxury Watches, Jewelry and Antiques:**

| DATE | AMOUNT OUT | AMOUNT IN | BANK | PAYEE |
|---|---|---|---|---|
| 6/22/22 | $95,810.00 | | KeyBank | Wrist Aficionado |
| 8/29/22 | $32,122.05 | | KeyBank | 1st Dibs |
| 11/18/22 | $21,688.29 | | KeyBank | 1st Dibs |
| 11/18/22 | $90,000.00 | | KeyBank | Cedric Dupont |
| 11/28/22 | $25,200.00 | | KeyBank | Cedric Dupont |
| 11/29/22 | $7,700.00 | | KeyBank | Cedric Dupont |
| 11/30/22 | $23,200.00 | | KeyBank | Cedric Dupont |
| 12/7/22 | $124,604.80 | | KeyBank | 1st Dibs |
| 12/12/22 | $85,000.00 | | KeyBank | Prive Porter |
| 12/21/22 | $318,000.00 | | Citibank | Wrist Aficionado |
| 12/23/22 | $19,000.00 | | KeyBank | Cedric Dupont |

17783949.5

| | | | | |
|---|---|---|---|---|
| 1/3/23 | $50,000.00 | | Citibank | Wrist Aficionado |
| 1/9/23 | $2,225,000.00 | | Citibank | Platinum Times LLC |
| 1/17/23 | $670,000.00 | | KeyBank | Timepiece Trading |
| 1/18/23 | $121,700.00 | | KeyBank | Giganti and Giganti |
| 1/18/23 | $66,300.00 | | KeyBank | Wrist Aficionado |
| 1/30/23 | $260,000.00 | | KeyBank | Luxury Bazaar |
| 2/14/23 | $88,000.00 | | KeyBank | Wrist Aficionado |
| 3/20/23 | $60,480.00 | | KeyBank | Richemont North |
| TOTAL: | $4,383,805.14 | | | |

**Purchases for Private Plane Charters with XO Global:**

| DATE | AMOUNT OUT | AMOUNT IN | BANK |
|---|---|---|---|
| 5/16/23 | $81,820.00 | | Citibank |
| 5/25/23 | $196,500.00 | | Citibank |
| 6/3/23 | $50,000.00 | | KeyBank |
| 6/3/23 | $50,000.00 | | KeyBank |
| 6/6/23 | $64,238.00 | | KeyBank |
| 8/4/23 | $31,600.00 | | KeyBank |
| 8/15/23 | $42,818.00 | | KeyBank |
| 9/15/23 | $28,628.00 | | KeyBank |
| 9/22/23 | $151,000.00 | | KeyBank |
| 10/10/23 | $37,900.00 | | KeyBank |
| 10/12/23 | $100,628.00 | | KeyBank |
| TOTAL: | $835,132.00 | | |

24.    Accordingly, at least $15,382,299.81 in Debtor funds were spent on personal expenditures of Mr. Roglieri.

25.    As revealed in the Roglieri Bankruptcy Case, the FBI has seized significant portions of the vehicles and other personal property, computers, phones and other items.  *See* Roglieri Bankruptcy Case, Docket No. 65.

26.    Additionally, Mr. Roglieri advised me prior to the Petition Date that he purchased a luxury home located in Virginia Beach, Virginia (the "Virginia Beach House"). According to the title documents obtained for the Virginia Beach House, the contract price was $3,750,000, and the sale was closed on or about January 31, 2023.  Mr. Roglieri also advised me that Kimmy Humphrey lives in the Virginia Beach House and pays the utilities, but does not pay rent or the insurance.

27. I placed insurance on the house when the current policy was set to expire in January of this year. I have been contacted by a real estate broker who states that she has a client very interested in making a purchase offer on the house.

28. On April 22, 2024, I commenced an adversary proceeding against Mr. Roglieri in the Roglieri Bankruptcy Case objecting to, among other things, the dischargeability of certain of Mr. Roglieri's debts pursuant to section 727, as well as Mr. Roglieri's eligibility for a discharge under section 523.

## RETENTION OF PROFESSIONALS

29. Contemporaneously with the filing of the Petition, I have filed an application pursuant to 11 U.S.C. § 327 seeking to retain and employ BST & Co. CPAs, LLC ("BST") to conduct a forensic accounting analysis of Prime's bank accounts. Prior to the Petition Date, BST reviewed substantial banking records, conferred several times with the Receiver and rendered several reports which detail, to the extent information is available from the banking records themselves, the sources of deposits into the accounts and disbursements from the accounts.

30. Additionally, it is necessary to employ counsel to provide bankruptcy-related services and advice to the Debtor in connection with the Chapter 11 Case. I will be filing an application for entry of an order, authorizing me to employ and retain Bond, Schoeneck & King, PLLC ("Bond") to serve as bankruptcy and litigation counsel for the Debtor. Bond has specialized knowledge in the areas of bankruptcy law, financial matters, litigation, and business restructuring. I believe that Bond is well-qualified to represent it in this case and that such retention would be in the best interests of the Debtor's estate.

## CONCLUSION

For the reasons set forth herein, and in the Initial Motions, this bankruptcy case is the only manner in which the assets of the Debtor may be marshalled for the benefit of all creditors who may then be paid in accordance with the priorities set forth under the Bankruptcy Code. I respectfully request that the Court grant the relief requested in the Initial Motions and provide such other and further relief as the Court may deem just and proper.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that to the best of my knowledge that the foregoing is true and correct.

Dated: May 14, 2024                                       /s/ *Paul A. Levine*

                                                                            Paul A. Levine
                                                                            Receiver of the Debtor