IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>**PRIME CAPITAL VENTURES, LLC,**<br><br>Debtor. | **Chapter 11**<br><br>**Case No. 24-10531** |

### B AND R ACQUISITION PARTNERS, LLC AND JHM LENDING VENTURES, LLC'S MOTION TO DISMISS BANKRUPTCY CASE

Creditors B and R Acquisition Partners, LLC ("B&R") and JHM Lending Ventures, LLC ("JHM," and with together with B&R, the "B&R Parties") move the Court to dismiss the above-captioned Chapter 11 for cause, *see* 11 U.S.C. § 1112(b), because the receiver who filed the petition commencing this case lacked the "specific authorization" and "power of management" required to do so. *In re 3P Highstown, LLC*, 631 B.R. 205, 209–10 (Bankr. D.N.J. 2021) (quoting *In re N2N Commerce, Inc.*, 405 B.R. 34, 41 (Bankr. D. Mass. 2009)).[1] Indeed, absent such authority, a court "has no alternative but to dismiss the petition." *Price v. Gurney,* 324 U.S. 100, 106 (1945). As for understanding why such authority doesn't exist here, the Court must consult the order appointing the receiver, as a receiver's "authority is wholly determined by the order of the appointing court." *See Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 98 (2d Cir. 1988).

The original order by the U.S. District Court for the Northern District of New York (the "District Court") appointing Paul Levine, Esq. (the "Receiver") as interim receiver over, in relevant part, Prime Capital,[2] preliminarily granted the Receiver seven categories of "powers and duties":

---

[1] The Declaration of Matthew W. McDade, submitted for the sole purpose of providing documents to the Court, is attached hereto as **Exhibit 1**.

[2] "Prime Capital" refers to Prime Capital Ventures, LLC. The Court additionally appointed the Receiver over Berone Capital Fund, LP, Berone Capital Partners LLC, Berone Capital LLC,

1

1. [E]xclusive dominion and control over all . . . assets, books and records, operations and business affairs . . . .

2. [A]uthority . . . vested in and extended to (a) all of [Debtor's] real property, equitable property, tangible and intangible personal property, interest, or assets of any nature, wherever located and (b) all claims, demands, or causes of action of any kind, character or description, regardless of the legal principle or theory upon which the same may be based, whether known or unknown, liquidated or unliquidated, disputed or undisputed, contingent or absolute, accrued or unaccrued, matured, insured or uninsured, joint or several, determined or undetermined, determinable or otherwise.

3. [A]uthori[ty] to operate and manage [Prime Capital's] business until further order of Court.

4. [A]uthori[ty] to take possession of and . . . close [Prime Capital's] existing deposit accounts and open new accounts in the Receiver's name.

5. [A]uthori[ty] to take any and all actions . . . deem[ed] appropriate in order to ascertain the amount and location of Defendants' assets.

6. [A]uthori[ty] to retain, employ, and pay for services of individuals or firms selected by the Receiver . . . .

7. [D]uties and responsibilities of a receiver under law, . . . answerable and account[able] to the Court for the Receiver's activities, . . . maintain[ing] a detailed accounting of his activities . . . .

*Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC et al.*, No. 1:24-cv-00055-MAD-CFH (the "District Court Case"), Doc. 8 at 2–3.[3]

However, after briefing and a hearing on the interim appointment of the Receiver, *see* District Court Case, Docs. 12, 13, 17, 23, 40, 42–43, 45, the District Court entered a Memorandum-Decision and Order which permanently appointed the Receiver, granting *less* power and authority

---

Berone Capital Equity Fund I, LP, and 405 Motorsports LLC, but subsequently terminated by order entered on June 24, 2024 in the District Court Case, Doc. 183.

[3] *See* Ex. 1–A, the Order to Show Cause for the Appointment of a Receiver on an Emergency Basis and for Expedited Discovery entered in the District Court Case, Doc. 8.

by *excluding* the original grants found in paragraphs 2(a), 3, 4, and 6 quoted above.[4] In other words, the Receiver does *not* have authority over:

- All claims, demands, or causes of action held by Prime Capital;

- Management of Prime Capital's business;

- The closing of existing deposit accounts and opening new ones in the Receiver's name; or

- The retaining, employing, and paying for professional services in Receiver's discretion without the District Court's intervention.

*Compare* Ex. 1–A at 2–3, *with* Ex. 1–B at 19–20.

The question presented to the Court, then, is whether the Receiver—with limited authority and no control over litigation or the "power of management" of the Debtor—could unilaterally file a petition for relief on behalf of the Debtor. *In re 3P Highstown, LLC*, 631 B.R. at 210. It could not. For these and the reasons that follow, the Court should dismiss this bankruptcy case for cause, pursuant to 11 U.S.C. § 1112(b).

## BACKGROUND

**I.     The District Court appoints the Receiver, who files the petition initiating this action, spurring disputes over authority and management of Prime Capital.**

1.      On December 19, 2023, Compass-Charlotte 1031, LLC, 526 Murfreesboro, LLC and Newlight Technologies, Inc. (collectively, the "Petitioning Creditors") filed an involuntary petition under Chapter 7 of 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code") as to Prime Capital, which the Petitioning Creditors later moved to voluntarily dismiss after threshold eligibility questions regarding the petition were raised by Prime Capital. *See In re Prime Capital Ventures, LLC*, No. 23-11302, (Bankr. N.D.N.Y.), Docs. 1, 72 and 74. While this Court granted the

---

[4] *See* Ex. 1–B, the Memorandum-Decision and Order, also from the District Court Case, Doc. 56.

3

Petitioning Creditors' motion for voluntary dismissal, the case remains pending as this Court retained jurisdiction over several issues, including: (i) application by alleged debtor pursuant to Bankruptcy Code § 303 for costs, attorneys' fees and damages, including punitive damages; (ii) application of alleged debtor for a bond; (iii) application to employ interim trustee together with compensation of counsel; (iv) all matters pertaining to the $5MM deposit into alleged debtor's account post-petition; and (v) Bankruptcy Rule 2016(b) disclosures by the attorneys representing the alleged debtor. *Id.*, Doc. 87.

2. On January 8, 2024, the District Court entered an Order to Show Cause for the Appointment of a Receiver on an Emergency Basis and for Expedited Discovery (the "Interim Order"), among other things, appointing, on an interim basis, the Receiver. *See* Ex. 1–A.

3. The Interim Order enumerates the provisional powers and duties of the Receiver as follows:

> 1. [E]xclusive dominion and control over all . . . assets, books and records, operations and business affairs . . . .
>
> 2. [A]uthority . . . vested in and extended to (a) all of [Debtor's] real property, equitable property, tangible and intangible personal property, interest, or assets of any nature, wherever located and (b) all claims, demands, or causes of action of any kind, character or description, regardless of the legal principle or theory upon which the same may be based, whether known or unknown, liquidated or unliquidated, disputed or undisputed, contingent or absolute, accrued or unaccrued, matured, insured or uninsured, joint or several, determined or undetermined, determinable or otherwise.
>
> 3. [A]uthori[ty] to operate and manage [Prime Capital's] business until further order of Court.
>
> 4. [A]uthori[ty] to take possession of and . . . close [Prime Capital's] existing deposit accounts and open new accounts in the Receiver's name.

4

> 5.  [A]uthori[ty] to take any and all actions . . . deem[ed] appropriate in order to ascertain the amount and location of Defendants' assets.
>
> 6.  [A]uthori[ty] to retain, employ, and pay for services of individuals or firms selected by the Receiver . . . .
>
> 7.  [D]uties and responsibilities of a receiver under law, . . . answerable and account[able] to the Court for the Receiver's activities, . . . maintain[ing] a detailed accounting of his activities . . . .

Ex. 1–A at 2–3.

3. On January 24, 2024, after briefing and a hearing related to the relief granted in the Interim Order, *see* Ex. 1–B at 2 (recounting the procedural history), the District Court entered its Memorandum-Decision and Order (the "Order"), among other things, permanently appointing the Receiver. *See id.* at 18–20.

4. The Order enumerates the permanent and final powers and duties of the Receiver as follows:

> 2.  [E]xclusive dominion and control over all . . . assets, books and records, operations and business affairs . . . .
>
> 3.  [A]uthority . . . vested in and extended to all . . . real property, equitable property, tangible and intangible personal property, interest, or assets . . . .
>
> 4.  [A]uthori[ty] to take any and all actions . . . deem[ed] appropriate in order to ascertain the amount and location of Defendants' assets.
>
> 5.  [D]uties and responsibilities of a receiver under law, . . . answerable and account[able] to the Court for the Receiver's activities, . . . maintain[ing] a detailed accounting of his activities . . . .

*Id.*

6. The Order omitted in paragraphs 2(a), 3, 4, and 6 from the Interim Order. In other words, the Order retracted and did not grant to the Receiver on a permanent basis, authority over:

5

- All claims, demands, or causes of action held by Prime Capital;

- Management of Prime Capital's business;

- The closing of existing deposit accounts and opening new ones in the Receiver's name; or

- The retaining, employing, and paying for professional services in Receiver's discretion without the District Court's intervention.

*See also* Ex. 1-C, District Court Case, Doc. 160 at 23–24, 40 (explaining the purpose of appointing the Receiver was to identify and locate assets and maintain the status quo of the parties).

7. On February 15, 2024, Roglieri filed a petition for relief under Chapter 11, Subchapter V of the Bankruptcy Code, which was later converted to a Chapter 7 proceeding on May 15, 2024, wherein Christian H. Dribusch, Esq. now serves as Chapter 7 Trustee (the "Chapter 7 Trustee"). *In re Kris Roglieri*, No. 24-10157, (Bankr. N.D.N.Y.), Docs. 1 and 159.

8. On May 14, 2024, the Receiver, purportedly on behalf of Prime Capital, initiated this bankruptcy case by filing a petition for relief under Chapter 11 of the Bankruptcy Code. *In re Prime Capital Ventures, LLC*, No. 24-10531, (Bankr. N.D.N.Y.).

9. Prime Capital's sole member and manager, Kris Roglieri, neither authorized the filing of nor did he sign the petition initiating this action. *Id.*

10. On May 31, 2024, Prime Capital moved to dismiss this case on the basis that the Receiver lacked authority to file the petition, which motion was later withdrawn. Docs. 36 and 40.

11. On the same day that Prime Capital filed its motion to dismiss (and prior to withdrawal of the same), the Chapter 7 Trustee filed a letter with this Court stating that the estate of Roglieri is the sole member of Prime Capital, meaning the Chapter 7 Trustee, as representative of the same, was the only individual able to file the Motion to Dismiss. Doc. 40. Consistent with

6

that authority, the Chapter 7 Trustee gave notice of withdrawal of the motion to dismiss, which issue was mooted by the subsequent withdrawal of the motion. *Id.*; Doc. 37.

12. On January 26, 2024, Prime Capital appealed the District Court's Order, as evidenced by notice of the same filed on the District Court docket. *See* District Court Case, Doc. 60. Subsequently, on June 17, 2024, that appeal was dismissed by stipulation, as evidenced by mandate of the same filed on the District Court docket. *Id.*, Doc. 183.

II. **The B&R Parties' $4.3MM confirmed arbitration award against Prime Capital and standing to file this Motion.**

13. Prime Capital and B&R entered into that certain Business Expansion Line of Credit Agreement, effective November 14, 2022, wherein Prime Capital agreed to lend B&R up to $22,575,000.00 to be used to fund an asset purchase (the "Loan"). Pursuant to the BELOC, B&R was required to deliver to Prime Capital a $4.3MM interest credit account deposit (the "ICA Deposit") which would be used to prepay interest following the closing and funding of the Loan. B&R delivered the ICA Deposit to Prime Capital on November 31, 2022. Prime Capital never funded the Loan and on June 15, 2023, B&R exercised its right to terminate the BELOC and made a demand for the return of the ICA Deposit in accordance with the terms of the BELOC. Prime Capital failed to return the ICA Deposit, and, as of the date hereof, the ICA Deposit has not been returned to B&R (the facts set forth in this paragraph, collectively referred to hereinafter as the "Dispute").

14. On August 21, 2023, the B&R Parties instituted an arbitration proceeding against Prime Capital and Kris Roglieri in order to resolve the Dispute, as well as other claims for damages, conversion and fraud.

15. On November 20, 2023, the B&R Parties filed a Motion for Summary Disposition in accordance with Rule 18 of JAMS Comprehensive Arbitration seeking an order and award based

7

on the undisputed facts of the Dispute, being that Prime Capital was required to return $4.3MM to the B&R Parties and admitted the same in its pleadings filed in the arbitration.

16. On January 15, 2024, after briefing and an evidentiary hearing, the Arbitrator granted the B&R Parties' Motion for Summary Disposition and awarded the B&R Parties $4.3MM in monetary damages against Prime Capital (the "Award"). *See* Ex. 1–D.

17. On January 18, 2024, the B&R Parties applied for an order pursuant to Article 75 of the Civil Practice Law and Rules to confirm the Award, filed as *In the Matter of the Application of B and R Acquisition Partners, LLC and JHM Lending Ventures, LLC v. Prime Capital Ventures, LLC*, Index No. 900844-24, Supreme Court, State of New York, Third Judicial District, Albany County (the "Confirmation Proceeding"), with said Award being confirmed, as evidenced by that certain Judgment dated February 8, 2024 in the Confirmation Proceeding (the "Judgment"). *See* Ex. 1–E.

18. As part of enforcing the Judgment, the B&R Parties, among other things, domesticated the Judgment in the Circuit Court of Virginia Beach, Virginia, pursuant to Virginia Code 8.01-465.3, against Prime Capital, notice of which was filed of record in the City of Virginia Beach, Virginia Judgment Lien Docket as Instrument No. 202404002909 on February 28, 2024 (the "Judgment Lien"). Said Judgment Lien creates a judgment lien against any and all real property held by Prime Capital located in Virginia Beach, VA. *See* Ex. 1–F.

19. The Debtor scheduled its obligations to the B&R Parties. Doc. 1 at 7.

20. Accordingly, the B&R Parties are creditors of the Debtor,[5] and thereby a party in interest under 11 U.S.C. § 1112(b)(1). *See e.g.*, *In re Lee*, 467 B.R. 906, 915 (B.A.P. 6th Cir. 2012) ("[C]reditors clearly have standing to request conversion or dismissal of a debtor's case.").

---

[5] As creditors, the B&R Parties are a party in interest. *See* 11 U.S.C. § 1109(b)

8

## STANDARD OF REVIEW

> [O]n request of a party in interest, and after notice and a hearing . . . the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

11 U.S.C. § 1112(b)(1). "It is well established that lack of authority to commence a bankruptcy case constitutes cause for dismissal." *In re ComScape Telecom., Inc.*, 423 B.R. 816, 829 (Bankr. S.D. Ohio 2010) (citing *In re A-Z Elec., LLC*, 350 B.R. 886, 891 (Bankr. D. Idaho 2006)).

## ARGUMENT

**I.   Courts must dismiss petitions filed by entities lacking the "power of management" or the "specific authorization" to file.**

"The filing of a bankruptcy petition 'is a *specific* act requiring *specific* authorization.'" *In re 3P Highstown, LLC*, 631 B.R. at 210 (emphasis added) (quoting *In re N2N Commerce, Inc.*, 405 B.R. at 41).[6] And "the bankruptcy court does not acquire jurisdiction unless those purporting to act for the corporation have authority under local law 'to institute the proceedings.'" *Hager v. Gibson,* 108 F.3d 35, 39 (4th Cir. 1997) (quoting *Price*, 324 U.S. at 106). Unsurprisingly, then, "[i]f a bankruptcy petition is filed by an entity lacking the 'power of management' in the corporate context, 'the bankruptcy case *must be dismissed* for want of legal authority to do so.'" *In re 3P Highstown, LLC*, 631 B.R. at 209–10 (emphasis added) (quoting *In re Advanced Vascular Res. of Johnstown, LLC*, 590 B.R. 689, 691 (Bankr. W.D. Pa. 2018)) (citing *In re NNN 123 N. Wacker, LLC*, 510 B.R. 854, 858–59 (Bankr. N.D. Ill. 2014)). Indeed, absent such authority, a court "has

---

[6] *See In re Arko Properties, Inc.*, 207 B.R. 624, 628 (Bankr. E.D. Ark. 1997) ("It is well-settled that a bankruptcy filing is a specific act requiring specific authorization.") (quoting *In re Stavola/Mansion Electric Co.*, 94 B.R. 21, 24 (Bankr. D. Conn. 1988)) (collecting cases).

9

no alternative but to dismiss the petition." *Price,* 324 U.S. at 106; *In re 3p Highstown, LLC*, 631 B.R. at 208.

So fundamental is this pre-requisite that, like subject matter jurisdiction, the "Court may raise the issue *sua sponte*." *In re 3p Highstown, LLC*, 631 B.R. at 208. Moreover, "should a court find that a debtor, who acts on behalf of a corporation, filed bankruptcy without the prerequisite authority, 'the Court . . . would be required to dismiss [that] unauthorized filing *even if § 1112(b) were not in the Bankruptcy Code*.'" *In re 3p Highstown, LLC*, 631 B.R. at 208 (emphasis added) (quoting *In re ComScape Telecom., Inc.*, 423 B.R. at 830) (collecting cases). And applicable case law's use of "corporation" need not blur the lines here—"[t]his precept of law operates in all corporate cases, including in those cases filed by a limited liability company." *In re Advanced Vascular Res. of Johnstown, LLC*, 590 B.R. at 691 (citing *In re Avalon Hotel Partners, LLC*, 302 B.R. 377 (Bankr. D. Or. 2003)).

**II.   The Receiver holds no "power of management" over Prime Capital and lacked the "specific authorization" to file a petition on its behalf, requiring dismissal.**

With the stakes and stage set, the question presented here becomes plain: was the Receiver "vested with 'the power of management'" such that he had "the requisite authority to file [Prime Capital's] bankruptcy petition"? *In re East End Dev., LLC*, 491 B.R. 633, 638 (Bankr. E.D.N.Y. 2013) (quoting *Price,* 324 U.S. at 104). Because he was not and did not, "the bankruptcy case must be dismissed . . . ." *In re 3P Highstown, LLC*, 631 B.R. at 209–10 (quoting *In re Advanced Vascular Res. of Johnstown, LLC*, 590 B.R. at 691) (citing *In re NNN 123 N. Wacker, LLC*, 510 B.R. at 858–59).

To start analysis, generally, "[s]tate law governs whether a business entity is authorized to file a petition in bankruptcy." *In re East End Dev., LLC*, 491 B.R. at 638 (citing *In re Am. Globus Corp.,* 195 B.R. 263, 265 (Bankr. S.D.N.Y. 1996)); *see also In re Avalon Hotel Partners, LLC,* 302

10

B.R. at 380. This case presents something different than general, though—a receivership. With a receiver, while state law may still have a role to play (though, the result is the same regardless of what source of authority the Court looks to, *see* Section III, *supra*), the first port of call is the order appointing the receiver. *See e.g.*, *In re Whittaker, Clark & Daniels, Inc.*, No. 23-13575, 2023 WL 4111338, at * 3 (Bankr. D.N.J. June 20, 2023) (addressing receiver appointment order prior to state law analysis, which dictated same result). That's because a receiver's "authority is wholly determined by the order of the appointing court." *Nyland (CF8) Ltd.*, 839 F.2d at 98; *Security Pc. Mortg. & Real Estate Servs., Inc. v. Rep. of Philippines*, 962 F.2d 204, 211 (2d Cir. 1992) ("As a court-created entity, a receiver has only those powers provided for in the appointment order and may perform only those acts expressly authorized by the appointing court."); *Daro Indus. v. RAS Enters.*, 44 N.Y.2d 969, 970–71 (1978) ("We would only add that the powers of a temporary receiver are limited to those enumerated in the appointing order. Since the temporary receiver in this case was not expressly granted the power to sue for claims of the corporation arising before his appointment, that power is retained by the corporation.") (internal citations omitted).

Here, the Order contains no grant of managerial authority, nor any authority to direct litigation or the claims of the Debtor. In fact, the District Court *removed* those powers from the Receiver, after having initially granted them in the Interim Order. *Compare* Ex. 1–A at 2–3, *with* Ex. 1–B at 19–20. The Court need not go further. After all and again, it is only those with the "power of management" that have the "specific authorization" to file a petition initiating a bankruptcy case. *In re 3P Highstown, LLC*, 631 B.R. at 209–10. Because the Order contains no such grant of authority, the Receiver lacked the ability to make the "specific act" of filing the petition here, and "the bankruptcy case must be dismissed . . . ." *Id.*

The Court can also rest assured that the authority to file isn't lurking in the more general grants of authority to the Receiver. To start, the District Court knew how to grant managerial rights and use that term. *See* Ex. 1–A at 2–3. The fact the District Court *retracted* that grant, alongside another right relating to management of the Debtor (the right to control litigation and claims), is proof positive that there's nothing "specific" to be found in the more general grants of control over the Debtor, such as over its "operations and business affairs . . . ." Ex. 1–B at 19. Even if doubt existed, case law shows just how reticent courts are to read into general grants the right to file a petition.

In *In re Whittaker, Clark & Daniel, Inc.*, an appointment order granted, among other things, "the power and authority to fully administer all assets . . . ." *In re Whittaker, Clark & Daniel, Inc.*, 2023 WL 411338 at *3. The order went on to provide a number of more "specific powers and duties afforded to the Receiver . . . none of which include[d] the exclusive power to file for bankruptcy or deprive the Board of that right." *Id.* Because of this language, the Receiver argued that only he had the right to file a petition for relief, not the underlying Board and sought dismissal of the petition filed by the Board on that basis. *Id.* at *1–2. While a receiver arguing a board lacks authority to file a petition presents the photo negative of the issue here, the reasoning and ruling denying the Receiver's motion stays on point:

> Here, Mr. Protopapas is a receiver. His duties are limited to those that can be inferred from the statute or those set forth in the Receivership Order. He is not a custodian acting in place of the Board and, absent a court order affording him such status, he is not the entity authorized to file for bankruptcy.

*Id.* at *6. When considering the gravity of the authority involved here, the *Whitaker* court "would expect an explicit direction in that regard in [the] Receivership Order." *Id.* at *5.[7]

---

[7] *Whitaker* is but one of many cases standing for the proposition that "the exclusivity of an administrative receiver's title to all assets under state law is irrelevant to the determination whether

12

Here, no such explicit direction exists. At best, only general authority over assets found its way into the Order, which specifically excluded the right to control litigation and the management of the Debtor. As such, no authority to file existed, and the Court should dismiss this case.

**III.    Just as with the Order, under Delaware and New York law, the power to manage Prime Capital stayed with Roglieri (and, perhaps now, the Chapter 7 Trustee).**

As noted above, as a general matter, "[s]tate law governs whether a business entity is authorized to file a petition in bankruptcy." *In re East End Dev., LLC*, 491 B.R. at 638. While in instances of a receivership courts must analyze the order appointing the receiver, a look to state law shows the result is no different. As a Delaware entity operating in New York (where this action sits), two states' laws could apply. Luckily, the relevant portions of both state's laws substantively track each other.

"Under New York Limited Liability Company Law, the LLC's operating agreement governs the parties' conduct. To the extent the agreement is silent, there are default provisions in the New York Limited Liability Company laws that apply." *In re East End Dev., LLC*, 491 B.R. at 639 (citing *Overhoff v. Scarp, Inc.,* 12 Misc. 3d 350, 359 (N.Y. Sup. Ct. 2005)). "Under New York Law, unless the company's articles of organization provide for it to be managed by managers, management of the limited liability company vests in its members." *In re Livonia Development LLC*, No. 19-47797-jmm, 2023 WL 5421832, at * 10 (Bankr. E.D.N.Y. Aug. 22, 2023) (citing N.Y. Ltd. Liab. Co. Law. § 401 (McKinney 2019)). "Under Delaware law, a limited liability

---

a particular entity may file for bankruptcy relief . . . [A] corporation may not be precluded by state law from availing itself of federal bankruptcy law." *In re Milestone Educ. Inst., Inc.*, 167 B.R. 716, 720–21 (Bankr. D. Mass. 1994) (quoting *Cash Currency Exch., Inc. v. Shine,* 762 F.2d 542 (7th Cir. 1985)) (quoting, in turn, *International Shoe Co. v. Pinkus,* 278 U.S. 261 (1929)); *see also In re Orchards Village Invest., LLC*, 405 B.R. 341, 349 (Bankr. D. Or. 2009) ("[A] state court receivership proceeding cannot be used to preclude a debtor from seeking federal bankruptcy protection, in spite of the broad authority granted to receivers in their appointment orders, such as the appointment order in this case.").

13

company is managed by its members and can only act through authorization provided in its operating agreement or Delaware law." *In re Westlake Property Holdings, LLC*, 606 B.R. 772, 778 (Bankr. N.D. Ill. 2019) (citing Del. Code tit. 6, § 18–402).

Reframed, under both New York and Delaware law, it's a limited liability company's members who manage the company as a starting point. So, unless there's something specifically taking management authority away from members, it stays right there. Nothing in the record indicates that such power left Roglieri prior to the appointment of the Chapter 7 Trustee. Certainly the Order doesn't strip that power away from Prime Capital and Roglieri, *see* Section II, *infra*. And while the Chapter 7 Trustee claims to presently hold that authority to the exclusion of all others, *see* Doc. 40, the petition initiating this action was filed prior to the appointment of the Chapter 7 Trustee. And regardless of whether Prime Capital's member-manager Roglieri or the Chapter 7 Trustee holds the power to manage the Debtor presently or at the time of filing, it certainly wasn't and isn't the Receiver.[8]

## CONCLUSION

It's no menial task to file a petition for relief under the Bankruptcy Code. It requires "specific authorization" and the "power of management" over a to-be-debtor to do so. *In re 3P Highstown, LLC*, 631 B.R. at 209–10 (quoting *In re N2N Commerce, Inc.*, 405 B.R. at 41). Absent such authority, a court "has no alternative but to dismiss the petition." *Price,* 324 U.S. at 106.

---

[8] In recent hearings and filings, Docs. 36, 37, 38, 40, 41 and 51, it appears that the Chapter 7 Trustee and the Receiver disagree over who should or can steer this action on behalf of the Debtor (*see*, *also*, *In re Kris Roglieri*, No. 24-10157, (Bankr. N.D.N.Y.), Docs. 197, 204 and 205). There's even disagreement between Prime Capital, Roglieri, and the Chapter 7 Trustee. *See* Doc. 40. The Court need not address these issues, however, to grant this motion and dismiss this bankruptcy case. But the fact that a fight over the power to manage the Debtor even exists underscores the fatal flaws of this bankruptcy case right from its inception.

Because the Receiver lacked such authority and power under the Order (as well as Delaware and New York law), the Court should dismiss this action, for cause, pursuant to 11 U.S.C. § 1112(b).

Dated: June 25, 2024.　　　　　　　　　　　　　　**BALCH & BINGHAM LLP**
　　　　Jackson, Mississippi

　　　　　　　　　　　　　　　　　　　　　　　　 /s/ *M. Patrick Everman*
　　　　　　　　　　　　　　　　　　　　　　　　M. Patrick Everman
　　　　　　　　　　　　　　　　　　　　　　　　Balch & Bingham LLP
　　　　　　　　　　　　　　　　　　　　　　　　188 E. Capitol Street, Suite 1400
　　　　　　　　　　　　　　　　　　　　　　　　Jackson, MS 39201
　　　　　　　　　　　　　　　　　　　　　　　　Telephone: (601) 965-8162
　　　　　　　　　　　　　　　　　　　　　　　　E-mail: peverman@balch.com

　　　　　　　　　　　　　　　　　　　　　　　　/s/ *Matthew W. McDade*
　　　　　　　　　　　　　　　　　　　　　　　　Matthew W. McDade
　　　　　　　　　　　　　　　　　　　　　　　　Balch & Bingham LLP
　　　　　　　　　　　　　　　　　　　　　　　　1310 Twenty Fifth Avenue
　　　　　　　　　　　　　　　　　　　　　　　　Gulfport, MS 39501
　　　　　　　　　　　　　　　　　　　　　　　　Telephone: (228) 214-0414
　　　　　　　　　　　　　　　　　　　　　　　　E-mail: mmcdade@balch.com

　　　　　　　　　　　　　　　　　　　　　　　　*Attorneys for B and R Acquisition Partners, LLC and JHM Lending Ventures, LLC*