UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In re:

PRIME CAPITAL VENTURES, LLC,                                        Case No. 24-10531
                                                                    Chapter 11
                              Debtor.
_____

**PRIME CAPITAL VENTURES LLC'S OBJECTION TO
B AND R ACQUISITION PARTNERS, LLC AND JHM LENDING
VENTURES, LLC'S MOTION TO DISMISS BANKRUPTCY CASE**

Paul A. Levine, Esq., the permanent receiver (the "Receiver") for Prime Capital Ventures LLC (the "Debtor" or "Prime"), by and through the Debtor's undersigned proposed counsel, respectfully submits this objection (this "Objection") to *B and R Acquisition Partners, LLC and JHM Lending Ventures, LLC Motion to Dismiss Bankruptcy Case* [Docket No. 57] (the "Motion"). In support of this Motion, the Debtor respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.     B and R Acquisition Partners, LLC and JHM Lending Ventures, LLC (together, the "B&R Parties") seek to dismiss the above captioned bankruptcy case on the basis that the Receiver Order (defined below) did not provide the Receiver the requisite authority to file a bankruptcy petition.

2.     For several reasons, each being sufficient to justify denial of the motion, the B&R Parties' argument lacks merit. First, it appears that the B&R Parties filed the Motion as a self-serving and calculated attempt to avoid preference and avoidance liability with respect to the domestication of their $4,300,000 B&R Judgment (defined below). The B&R Parties' motivation in filing the Motion is obvious here. Additionally, and as set forth below, the Debtor submits that the B&R Parties lack standing to assert that the Receiver lacked the authority to file the above captioned bankruptcy case (this "Chapter 11 Case"). The Receiver Order (defined below)

18060678.v4

conferred the Receiver with the authority to manage Prime's business and legal affairs, which necessarily included the authority to file this Chapter 11 Case. In fact, prior to the Petition Date (defined below), New York State Supreme Court, New York County (the "State Court"), ruled that the Receiver has the authority to conduct the legal affairs of Prime.

3. Assuming arguendo that the Receiver lacked the authority to file this Chapter 11 Case, the Trustee (defined below), has ratified the filing through the *Statement of Ratification of the Prime Capital Ventures, LLC Bankruptcy Filing* [Docket No. 66] (the "Trustee Ratification"). Thus, the Motion has been rendered moot by the Trustee Ratification.

4. Additionally, the Receiver and Trustee are seeking approval of the Proposed Stipulation and Order (defined below), which further clarifies the scope of authority and responsibilities between the Trustee and Receiver. The Proposed Stipulation and Order is currently scheduled to be considered by this Court on July 31, 2024.

5. Accordingly, the Receiver respectfully requests that the Court issue an order denying the Motion in its entirety, with prejudice.

## BACKGROUND

6. On January 24, 2024, the United States District Court for the Northern District of New York (the "District Court") appointed Paul A. Levine to act as the receiver with, among other things, exclusive dominion and control over all of the assets, books and records, operations, and business affairs of the Debtor. *See Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC et. al.*, Case no. 24-cv-00055 [Docket No. 56] (MAD/DJS) (N.D.N.Y 2024) (the "Receiver Order"). A copy of the Receiver Order is attached hereto as ***Exhibit A***.

7. On May 14, 2024 (the "Petition Date"), the Receiver filed a voluntary petition on behalf of the Debtor for relief under chapter 11 of the Bankruptcy Code with the United States

2

Bankruptcy Court for the Northern District of New York (this "Court"), commencing this Chapter 11 Case.

8.   The Receiver continues to manage the Debtor's affairs. No request for a trustee or examiner has been made in this Chapter 11 Case.

9.   The Debtor's former sole member Kris Roglieri is currently the debtor in a pending Chapter 7 bankruptcy case that was converted from a Chapter 11 Subchapter V bankruptcy case on May 15, 2024 [Case No. 24-10157, Bankr. N.D.N.Y.] (the "Roglieri Bankruptcy Case"). Christian H. Dribusch (the "Trustee") was appointed as the chapter 7 trustee in the Roglieri Bankruptcy Case on May 15, 2024.

10.   More detailed information regarding the Debtor's history, business operations, and the events leading up to this Chapter 11 Case is set forth in the *Declaration of Paul A. Levine Regarding the Debtor's Assets and Operations and in Support of the Chapter 11 Petition and First Day Pleadings*, which was filed on the Petition Date and is incorporated herein by reference [Docket No. 5].

***Virginia Property and B&R Litigation***

11.   Prior to the Petition Date, on about January 31, 2023, the Debtor purchased, with cash, a luxury home located at 600 Linkhorn Drive, Virginia Beach, Virginia (the "Virginia Beach House") for $3,750,000.

12.   Significantly, the precipitating cause of the filing of the Prime Chapter 11 Case was the need to commence proceedings within the 90 day preference period under § 547 of the Bankruptcy Code in order to be able to avoid the judgment of B and R Acquisition Partners LLC and JHM Lending Ventures LLC (the "B&R Judgment") against Prime for $4,300,000, which was domesticated as a lien against the Virginia Beach House on February 28, 2024.

13.     The Virginia Beach House is a major asset of this estate which should be liquidated for the benefit of all its creditors, and not just the B&R Parties.

*ER Tennessee Litigation*

14.     On January 16, 2024, ER Tennessee, LLC ("ER Tennessee"), a Prime creditor, commenced an action against Prime in the Supreme Court of New York, New York County (the "State Court"), asserting causes of action for, among other things, breach of contract and fraudulent conveyance. *See ER Tennessee, LLC v. Prime Capital Ventures, LLC*, et al., Index No. 650231/2024 ("ER Litigation").

15.     On April 5, 2024, in response to a question regarding whether prior Prime management or the Receiver had authority to defend the ER Litigation, the State Court issued an order to show cause why the filings of Prime's prior management should not be stricken in light of the Receiver Order granting the Receiver authority (the "ER OTSC"). A copy of the ER OTSC is attached hereto as ***Exhibit B***.

16.     On April 18, 2024, after briefing in response to the ER OTSC, the ER Litigation court issued a Decision and Order (the "ER Decision and Order"), which held that the Receiver Order granted the Receiver the authority to handle the legal affairs of Prime. A copy of the ER Decision and Order is attached hereto as ***Exhibit C***.

17.     More specifically, the ER Decision and Order provides, in relevant part as follows:

> Defending lawsuits is part of the "operations and business affairs of" a company and thus is within the scope of the receivership order. Deciding whether to settle or litigate, and indeed how much to spend on attorneys, can materially affect a company's finances. Given the nature of the receiver's role, the context of his appointment, and the breadth of his duties, it seems doubtful that the district court intended to carve out directing the company's legal affairs from the scope of his authority. After all, the district court permitted the federal third-party action commenced by the receiver to proceed.

> Presumably the district court would not have done so if the receiver was not in charge of the company's legal affairs.

*See* ER Decision and Order (internal citations omitted).

### *Receiver and Trustee Stipulation*

18. The Trustee and the Receiver have a unity of interest in pursuing continuing their investigation of Prime, Roglieri, and any affiliates and related entities for the benefit of the estates' creditors. In the relatively short period of time since these fiduciaries have been in place, substantial progress has been made in identifying assets and developing preliminary plans for Bankruptcy Rule 2004 discovery and commencement of fraudulent conveyance actions, among other things. The Trustee and the Receiver have been sharing information and attempting to coordinate their efforts.

19. In furtherance of these efforts, the Trustee and the Receiver have crafted a proposed stipulation and order (the "Proposed Stipulation and Order") that, among other things:

   a. Provides for the Trustee on behalf of Roglieri as the sole managing member of Prime, to formally ratify the Receiver's filing of Prime's Chapter 11 case;

   b. Converts the Prime Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code;

   c. Provides for the Trustee to also become the trustee of the Prime estate;

   d. Provides for the appointment of Receiver Paul A. Levine to become the responsible person of Prime;

   e. Provides for the procedural consolidation and joint administration of the Roglieri and Prime estates; and

   f. Authorizes Bond, Schoeneck & King, PLLC to submit fee applications in the Prime chapter 7 case for its services rendered to and expenses incurred on behalf of Prime during its chapter 11 case, and authorizes the Trustee to promptly pay all such allowed fees and expenses.

5

18060678.v4

20. On July 8, 2024, the Trustee and Receiver filed their *Joint Motion for Order Pursuant to § 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Stipulation and Granting Relief* [Docket No. 61] (the "9019 Motion"), seeking approval of the Proposed Stipulation and Order. A hearing on the 9019 Motion is set for July 31, 2024.

21. Indeed, as set forth above, on July 8, 2024, the Trustee ratified the Receiver's filing of the Chapter 11 Case filing through the Trustee Ratification. *See* Docket No. 66.

**OBJECTION**

*I. The Receiver was Authorized to File the Petition Pursuant to the Receiver Order and State Law.*

22. The Bankruptcy Code does not establish who has authority to file a bankruptcy petition, so courts look to the state law governing the debtor to determine authority. *In re Am. Globus Corp.*, 195 B.R. 263, 265 (Bankr. S.D.N.Y. 1996); *In re Quad-C Funding LLC*, 496 B.R. 135, 141 (Bankr. S.D.N.Y. 2013) ("The Court recognizes that the Bankruptcy Code does not establish express rules relating to authority to file a voluntary petition for relief. In order to determine authority to file, bankruptcy courts initially look to the state law governing the entity.") (citations omitted).

23. In cases involving a receiver's authority to file, courts also look to the language of the order appointing the receiver in the first instance. *See In re StatePark Bldg. Grp., Ltd.*, 316 B.R. 466, 472 (Bankr. N.D. Tex. 2004) (holding that the language of the receiver order and state law authorized the receiver to file a bankruptcy petition.); *In re Whittaker, Clark & Daniels, Inc.*, 2023 WL 4111338, at *3 (Bankr. D.N.J. June 20, 2023) (analyzing language of receiver's authority under appointment order before analyzing state law).

24. As set forth more completely below, the language in the Receiver Order could not be more expansive because it conferred upon the Receiver "exclusive dominion and control over

6

all of the assets, books and records, operations, and business affairs of the Debtor." It cannot be seriously argued that protecting the assets of a Debtor and allowing it, as best as possible, to meet its obligations to creditors by filing a bankruptcy petition is not well within the operations and business affairs of the Debtor.

### A. The Motion is Moot Because the Trustee Ratified the Filing Pursuant to State Law

25. Even should the Court have any doubt about the authority the District Court conferred, the Receiver agrees with the B&R Parties insofar as they contend that either New York or Delaware law could apply to the authority issue, because under either state law, the result would be the same.

26. Under New York and Delaware law, acts of a limited liability company are authorized by the members thereof, unless the operating agreement or articles of incorporation provide otherwise. *See* N.Y. LIMITED LIABILITY COMPANY LAW § 401 (2024); *see also* DEL. CODE TIT. 6, § 18–402 (2024).

27. The Receiver Order granted the Receiver the authority to manage the affairs of Prime, as if he was a sole member. *See generally*, *Eberhard v. Marcu*, 530 F.3d 122, 132 (2d Cir. 2008) (holding that "the authority of a receiver is defined by the entity or entities in the receivership. '[T]he plaintiff in his capacity of receiver has no greater rights or powers than the corporation itself would have.'") (quoting *Fleming v. Lind–Waldock & Co.*, 922 F.2d 20, 25 (1st Cir.1990)).

28. Notwithstanding the foregoing, this Court need not determine whether the broad grant of authority under the Receiver Order was sufficient to authorize a bankruptcy petition under state law because in this case, the Trustee expressly ratified the Receiver's filing of the petition. *See In re Richardson Foods, Inc.*, 659 B.R. 154, 169 (Bankr. S.D.N.Y. 2024); *In re W.R. Grace &*

7

*Co.*, 366 B.R. 302 (Bankr. Del. 2007) (holding that in the Third Circuit, "the unauthorized filing of a bankruptcy petition can be ratified and that ratification relates back to the original filing."); *see also In re Dearborn Process Serv., Inc.*, 149 B.R. 872, 878–79 (Bankr. N.D. Ill. 1993) (holding that defective authority to file "can be cured here by subsequent ratification or acquiescence by the directors."); *Off. Comm. of Unsecured Creditors of Renaissant Lafayette LLC v. Interforum Holding LLC*, 2013 WL 1163783, at *5 (E.D. Wis. Mar. 20, 2013)("an unauthorized filing of a voluntary petition in bankruptcy on behalf of a corporation may be ratified in appropriate circumstances by ensuring conduct of persons with power to have authorized it originally"); *Boyce v. Chemical Plastics, Inc.*, 175 F.2d 839, 842–44 (8th Cir.1949) (holding an unauthorized bankruptcy filing was ratified and validated by subsequent board of directors' resolution).

29. The *Richardson Foods* case is particularly instructive here. There, the chapter 7 trustee of Richardson Foods, Inc. decided in her business judgment to file an additional chapter 7 petition for Richardson Brands Company, a wholly owned subsidiary of Richardson Foods, Inc. *In re Richardson Foods, Inc.*, 659 B.R. at 162 (Bankr. S.D.N.Y. 2024). The trustee's authority to file chapter 7 for Richardson Brands Company was challenged by various parties to adversary proceedings. Putting aside the issue of standing, which the bankruptcy court held the movants did not have, the court held that under Florida law, a corporation's unauthorized acts can be ratified by a principal either expressly or by implication. *See id.*, at 169. The Court added that because the trustee held 100% shares of Richardson Brands Company as property of the estate in the Richardson Foods, Inc. case, the trustee could "step into the shoes" of Richardson Foods, Inc. and exercise whatever rights it had, including authorizing a bankruptcy filing for Richardson Brands Company. *See id.*, at 173.

30. "Under New York law, a principal can be held liable for the unauthorized acts of an agent that the principal later ratifies." *RLI Ins. Co. v. Athan Contracting Corp.*, 667 F. Supp. 2d 229, 235 (E.D.N.Y. 2009). Similarly, "Delaware law recognizes that previously unauthorized actions can be validated by ratification" and that such ratification relates back to the time of the unauthorized conduct. *In re Pinnacle Land Grp., LLC*, 2018 WL 4348051, at *9 (Bankr. W.D. Pa. Sept. 10, 2018).

31. Here the Trustee, like the trustee in *Richardson Foods*, has full control over the property of debtor Kris Roglieri, which includes 100% ownership of Prime. Further, the Trustee expressly ratified the filing of the Prime Chapter 11 Case pursuant to the Trustee Ratification, as well as in the Proposed Stipulation and Order, which is currently pending approval by this Court.

32. Accordingly, the Receiver respectfully submits that due to the Trustee's ratification of the Chapter 11 Case, the Receiver had authority under state law rendering the Motion moot. As such, the Receiver respectfully requests that the Court issue an order denying the Motion, with prejudice.

### B. Authority under Receiver Order

33. Even if the Trustee had not ratified the filing of this Chapter 11 Case, the Receiver's authority here derives from a federal order appointing him as the receiver of Prime. Specifically, the Receiver Order provides in relevant part that:

   a. The Receiver shall have and retain and is hereby granted exclusive dominion and control over all of the assets, books and records, operations and business affairs of [Prime].
   b. The Receiver's authority hereunder shall be, and hereby is, vested in and extended to all of [Prime's] real property, equitable property, tangible and intangible personal property, interest, or assets of any nature, wherever located.
   c. The Receiver is authorized to take any and all actions the Receiver, in his sole discretion, deems appropriate in order to ascertain the amount and location of [Prime's] assets.

    d.    The Receiver shall have the duties and responsibilities of a receiver under law, shall be answerable and account to the Court for the Receiver's activities, and shall maintain a detailed accounting of his activities, including without limitation, any and all funds collected and used for any purpose.

    e.    The Receiver shall not be liable for any debts or liabilities of [Prime].

*See* Receiver Order, pg. 22.

34. Notwithstanding this broad, expansive grant of authority, the B&R Parties claim the Receiver lacks authority over:

- All claims, demands, or causes of action held by Prime Capital;
- Management of Prime Capital's business;
- The closing of existing deposit accounts and opening new ones in the Receiver's name; or
- The retaining, employing, and paying for professional services in Receiver's discretion without the District Court's intervention.

*See* Motion, pg. 3.

35. The B&R Parties' position ignores the plain meaning of the Receiver Order. As an initial matter, the first decretal paragraph of the Receiver Order grants the Receiver "exclusive dominion and control over all of the assets . . . operations and business affairs of" Prime. "It is beyond cavil that the filing of a bankruptcy petition is an integral part of the 'business and affairs' of a corporation." *Matter of Giggles Rest., Inc.*, 103 B.R. 549, 553 (Bankr. D.N.J. 1989). This provision, along with the balance of the Receiver Order, granted the Receiver the authority to file the Chapter 11 Case.

36. Even the narrowest interpretation of the Receiver Order would suggest that a grant of exclusive dominion and control of Prime's assets would allow the Receiver to open and close deposit accounts to safeguard such assets, which according to the B&R Parties, is unauthorized.

10

37. Similarly, the Receiver Order provides that the Receiver's authority is "vested in and extended to all of [Prime's] real property, equitable property, tangible and intangible personal property, interest, or assets of any nature." Causes of action, which the B&R Parties argue fall outside of the Receiver's authority, are property interests under state law. *In re Strada Design Assocs., Inc.*, 326 B.R. 229, 235 (Bankr. S.D.N.Y. 2005) (analyzing when a cause or action accrues before holding that "[w]ithout doubt, causes of action that accrue under state law prior to the filing of a bankruptcy petition become 'property of the estate.'").

38. Finally, the issue of the Receiver's authority to conduct the legal affairs of Prime, including to retain professionals and incur legal fees, has already been adjudicated by a court of competent jurisdiction through the ER Decision and Order.

39. Accordingly, the Receiver Order is easily broad enough to confer the Receiver the authority to file the Chapter 11 Case.

## II.     *The B&R Parties Lack Standing to Bring the Motion.*

40. The B&R Parties lack standing to raise issues concerning the Receiver's authority to file the Chapter 11 Case. Courts, including the Supreme Court of the United States, have long held that creditors lack standing to challenge a debtor's authority to file bankruptcy:

> Even if action of directors authorizing the filing of a voluntary petition ... were in excess of the authority conferred, or otherwise invalid, creditors could not for that reason attack the consequent adjudication. The question is purely one of the internal management of the corporation. Creditors have no standing to plead statutory requirements not intended for their protection. If the stockholders' rights had been infringed, and they chose to waive them, a creditor could not assert them in opposing an adjudication.

*See Royal Indem. Co. v. Am. Bond & Mortg. Co.*, 289 U.S. 165, 171 (1933); *see also In re Mag. Assocs.*, 46 F. Supp. 808, 813 (S.D.N.Y. 1941) (holding that creditors lack standing to challenge a debtor's authority to convert bankruptcy proceedings); *Schneider, Inc. v. Beckerman*, 2 N.Y.2d

11

18060678.v4

493, 499 (N.Y. 1957) ("[C]omplete strangers to the corporation . . . should not be permitted to question [its] authority and thereby frustrate the action."); *In re Gucci*, 174 B.R. 401, 412 (Bankr. S.D.N.Y. 1994) ("Generally, a creditor may not challenge a corporate filing on the ground that it was not properly authorized."); *In re Guanacevi Tunnel Co.*, 201 F. 316, 318 (2d Cir. 1912) (examining an argument concerning authority to file bankruptcy although "it is one which a creditor has no standing to make in the case of a voluntary petition.").

41. Notwithstanding the foregoing, there is a limited exception for this general prohibition where "the party raising the challenge has a stake in the case sufficient to entitle it to be heard, taking into account the policies underlying the principles it invokes and the scope of protections intended to be afforded by those policies." *See In re Gucci*, 174 B.R. at 412 (denying motion to dismiss filed by "general creditor" for lack of standing with respect to authority issues).

42. The underlying policy for prohibiting creditors from asserting lack of authority arguments that normally belong to the shareholders of a debtor is that the "creditor may not be trying to protect the rights of shareholders" and instead, "may only be trying to protect transfers to it that the bankruptcy trustee might recover for the benefit of all the corporation's creditors." *In re John Hicks Chrysler-Plymouth, Inc.*, 152 B.R. 503, 510 (Bankr. E.D. Tenn. 1992); *In re Consol. Auto Recyclers, Inc.*, 123 B.R. 130, 137 (Bankr. D. Me. 1991) (holding that "arguments [concerning authority to file] interposed by creditors seeking to protect a preference or to retain some other advantage at the expense of others should not be indulged.").

43. The B&R Parties' motivation for filing the Motion is obvious. There is no question that the B&R Parties, to the severe prejudice of all other creditors, are raising their lack of authority argument to further their own interests in preventing the B&R Judgment from being avoided under section 547 of the Bankruptcy Code, not to further the interests of Prime or its estate.

18060678.v4

44.     Accordingly, B&R Parties lack standing to bring the Motion, and therefore, the Motion should be denied.

**WHEREFORE**, the Receiver respectfully requests that the Court enter an Order, (i) denying the Motion in its entirety, with prejudice; and (ii) granting such other relief as the Court deems just and proper.

Dated: July 10, 2024
      Syracuse, New York

BOND, SCHOENECK & KING, PLLC

By:     /s/ Stephen A. Donato
Stephen A. Donato (Bar Roll No. 101522)
Justin S. Krell (Bar Roll No. 704364)
Andrew S. Rivera (Bar Roll No. 700712)
One Lincoln Center
Syracuse, New York 13202
Tel: (315) 218-8000
Fax: (315) 218-8100
Email: sdonato@bsk.com
      jkrell@bsk.com
      arivera@bsk.com

*Proposed Counsel to Prime Capital Ventures, LLC*

18060678.v4