UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

PRIME CAPITAL VENTURES, LLC,

Case No. 24-10531
Chapter 11

Debtor.

APPEARANCES:

M. Patrick Everman, Esq.
Matthew W. McDade, Esq.
Balch & Bingham LLP
*Attorneys for B and R Acquisition Partners, LLC and JHM Lending Ventures, LLC*
188 East Capitol Street, Suite 1400
Jackson, Mississippi 39201

Stephen A. Donato, Esq.
Edward J. Lobello, Esq.
Justin S. Krell, Esq.
Andrew S. Rivera, Esq.
Bond, Schoeneck & King, PLLC
*Proposed Attorneys for Debtor, Prime Capital Ventures, LLC*
One Lincoln Center
Syracuse, New York 13202

Paul A. Levine, Esq.
Lemery Greisler LLC
*Permanent Receiver for Prime Capital Ventures, LLC*
677 Broadway, 8th Floor
Albany, New York 12207

Christian H. Dribusch, Esq.
The Dribusch Law Firm
*Chapter 7 Trustee in the Matter of Kris Daniel Roglieri, Case No. 24-10157*
187 Wolf Road, Suite 300-20
Albany, New York 12205

Pieter H.B. Van Tol, III, Esq.
Hogan Lovells US LLP
*Former Attorney for Prime Capital Ventures, LLC*

-1-

390 Madison Avenue
New York, New York 10017

Justin A. Heller, Esq.
Matthew M. Zapala, Esq.
Nolan Heller Kauffman LLP
*Attorneys for Compass-Charlotte 1031, LLC*
80 North Pearl Street, 11th Floor
Albany, New York 12207

William L. Esser, IV, Esq.
Parker, Poe, Adams & Bernstein LLP
*Attorney for Compass-Charlotte 1031, LLC*
620 South Tryon Street, Suite 800
Charlotte, North Carolina 28202

Jon T. Powers, Esq.
White and Williams LLP
*Attorney for Piper Capital Funding LLC*
7 Times Square, Suite 2900
New York, New York 10036

Joseph P. Lombardo, Esq.
Chapman and Cutler LLP
*Attorney for ER Tennessee LLC*
320 South Canal Street
Chicago, Illinois 60606

Robert E. Littlefield, Jr., United States Bankruptcy Judge

**MEMORANDUM DECISION AND ORDER**

Currently before the Court is a motion to dismiss this Chapter 11 bankruptcy proceeding pursuant to 11 U.S.C. § 1112(b) (the "Motion"). The Court has jurisdiction via 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(A) and 1334(b).[1]

---

[1] Unless otherwise indicated, all chapter and section references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (2024) ("Bankruptcy Code").

## FACTS

On January 12, 2024, District Judge Mae A. D'Agostino appointed Paul A. Levine, Esq. (the "Receiver") as the temporary receiver of Prime Capital Ventures, LLC ("Prime") in the case *Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC et al.*, Case No. 24-cv-00055.[2] (Dist. No. 8).[3] On January 24, 2024, Judge D'Agostino made the Receiver's appointment permanent. (Dist. No. 56). On February 15, 2024, Kris Daniel Roglieri ("Roglieri"), the sole member and 100% shareholder of Prime, filed an individual Subchapter V bankruptcy petition. On May 14, 2024, the Receiver filed a voluntary Chapter 11 petition on behalf of Prime. (ECF No. 1). On May 15, 2024, Roglieri's bankruptcy case was converted to Chapter 7. *See* Case No. 24-10157.

On June 25, 2024, B and R Acquisition Partners, LLC and JHM Lending Ventures, LLC (collectively, the "B&R Parties") filed the Motion alleging Prime's case was improperly filed. (ECF No. 57). On July 9, 2024, Christian H. Dribusch, Esq., the Chapter 7 Trustee (the "Trustee") for the estate of Roglieri, filed a statement of ratification of Prime's bankruptcy filing. (ECF No. 66). On July 10, 2024, the Trustee filed opposition to the Motion. (ECF No. 73). Compass-Charlotte 1031, LLC ("Compass") and the Receiver have also objected (collectively, with the Trustee, the "Objecting Parties"). (ECF Nos. 76–77). On July 17, 2024, a hearing on the Motion was held and the matter was placed on reserve. (ECF No. 83).

---

[2] The Court hereby takes judicial notice of the docket of the District Court proceeding. *See* Fed. R. Evid. 201.

[3] Citations to the docket of the bankruptcy proceeding (Case No. 24-10531) will be referenced as "(ECF No. #);" citations to the docket of the district court proceeding (Case No. 24-cv-00055) will be referenced as "(Dist. No. #)."

**ARGUMENTS**

The B&R Parties argue the Receiver did not have the requisite authority to file the present bankruptcy case, citing a lack of "managerial authority" and "any authority to direct litigation or the claims of the Debtor." (ECF No. 57 at 11). In support of their contention, the B&R Parties cite the temporary and permanent appointment orders of the District Court and note that the language granting control over Prime's legal affairs was not included in the permanent appointment order. (*Id.* at 12). Rather, the B&R Parties contend the power to file Prime's bankruptcy rested with Roglieri. (*Id.* at 13–14; ECF No. 83).

The Objecting Parties collectively argue four points in opposition to the Motion. First, the Receiver argues the B&R Parties lack standing to challenge the Receiver's authority. (ECF No. 77 at 11–12). Second, Compass and the Receiver aver that the Receiver did, in fact, have the authority to file the bankruptcy, citing the District Court's granting of "exclusive dominion and control over all of the assets, . . . operations and business affairs of [Prime]" and authority over "all of [Prime's] assets of any nature . . . ." (ECF No. 76 at 2; ECF No. 77 at 6–7, 9–11). Third, the Objecting Parties claim that the question of the Receiver's authority is moot since the Trustee has subsequently ratified the bankruptcy. (ECF No. 73 at 3–5; ECF No. 76 at 3; ECF No. 77 at 7–9). Fourth, the Trustee contends that dismissal of this case would not be in the best interest of creditors. (ECF No. 73 at 4).

**DISCUSSION**

Under 11 U.S.C. § 1112(b), "on request of a party in interest . . . the court shall convert a case under this chapter . . . or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . ." 11 U.S.C. § 1112(b)(1). "The burden is on the movant

to prove Section 1112(b) 'cause' by a preponderance of the evidence." *In re Van Eck*, 425 B.R. 54, 59 (Bankr. Conn. 2010) (citing *In re Woodbrook Assocs.*, 19 F.3d 312, 317 (7th Cir. 1994)).

### I.     The B&R Parties' Standing

The Court first turns to whether the B&R Parties have standing to bring the Motion. A motion to dismiss or convert under § 1112(b) may be made "on request of a party in interest." 11 U.S.C. § 1112(b)(1). A party in interest includes "the debtor, the trustee, . . . [and] a creditor . . . ." 11 U.S.C. § 1109(b). The B&R Parties are creditors listed by the Receiver in Prime's schedules, therefore falling under the ambit of § 1109(b) and, consequently, § 1112(b). (ECF No. 31 at 10, 15).

The Receiver relies on several cases to argue the B&R Parties "lack standing to raise issues concerning the Receiver's authority to file the Chapter 11 case." Only one of the cited cases, *In re Gucci*, 174 B.R. 401 (Bankr. S.D.N.Y. 1994), involves a § 1112(b) standing matter. (ECF No. 77 at 11–13). Yet even *Gucci* is distinguishable from the present case. In *Gucci*, creditors of the parent company filed a motion to dismiss the bankruptcies of several subsidiaries under § 1112(b), alleging that the trustee lacked the authority to file them. But the question of the creditors' standing arose because they "base[d] their challenge to the Trustee's authority, not as creditors of one of the Related Entities, but as creditors of the [parent companies]." *In re Gucci*, 174 B.R. at 412. Here, the B&R Parties bring this Motion as direct creditors of Prime.[4] As such, the Court finds the reasoning of *Gucci* to be unpersuasive and that the B&R Parties have standing to bring the Motion.

### II.    Receiver's Authority

When determining who has the authority to file a bankruptcy petition, "bankruptcy courts initially look to the state law governing the entity." *In re Quad-C Funding LLC*, 496 B.R. 135, 141

---

[4] It is unclear why B and R Acquisition Partners, LLC is listed as a secured creditor and JHM Lending Ventures, LLC is an unsecured creditor when both are parties on the same judgment lien.

(Bankr. S.D.N.Y. 2013) (citing *Price v. Gurney*, 324 U.S. 100, 106 (1945)). A receiver's authority "is wholly determined by the order of the appointing court." *Citibank, N.A. v. Nyland (CF8), Ltd.*, 839 F.2d 93, 98 (2d Cir. 1988) (citing *Stokes v. Hoffman House of New York*, 46 A.D. 120, 130 (1st Dep't 1899).

Compass and the Receiver's position is based on specific language in the District Court's January 24, 2024, order which enumerates the scope of the receivership:

> 1. The Receiver shall have and retain and is hereby granted exclusive dominion and control over all of the assets, books and records, operations and business affairs of Defendants.
>
> 2. The Receiver's authority hereunder shall be, and hereby is, vested in and extended to all of Defendants' real property, equitable property, tangible and intangible personal property, interest, or assets of any nature, wherever located.
>
> 3. The Receiver is authorized to take any and all actions the Receiver, in his sole discretion, deems appropriate in order to ascertain the amount and location of Defendants' assets.
>
> 4. The Receiver shall have the duties and responsibilities of a receiver under law, shall be answerable and account to the Court for the Receiver's activities, and shall maintain a detailed accounting of his activities, including without limitation, any and all funds collected and used for any purpose.
>
> 5. The Receiver shall not be liable for any debts or liabilities of Defendants.

*Compass-Charlotte 1031, LLC v. Prime Cap. Ventures, LLC*, Case No. 24-cv-00055, 2024 U.S. Dist. LEXIS 12276, at *27–28 (N.D.N.Y. Jan. 24, 2024) (hereinafter "January MDO"). The arguments in favor of the Receiver having proper authority rely heavily on the first and second clauses, claiming that the order is "worded in the broadest terms possible" and "could not be more expansive." (ECF No. 76 at 2; ECF No. 77 at 6). The Court disagrees.

First, Compass and the Receiver fail to analyze the remaining clauses. The first and second clauses define the extent of the Receiver's control, granting him dominion over assets and the

operation of the Defendants' businesses. But it is the third clause that defines the scope of the Receiver's authority. Specifically, "[t]he Receiver is authorized to take any and all actions the Receiver, in his sole discretion, deems appropriate *in order to ascertain the amount and location of Defendants' assets*." January MDO, at *27 (emphasis added). The broad powers that the District Court granted to the Receiver are for the purpose of identifying and locating assets. The first and second clauses are confined to the furtherance of the purpose enshrined in the third clause. There is nothing in the authorizing language suggesting the Receiver's authority includes placing Prime into bankruptcy.

Second, the Receiver and Compass do not address the procedural history of the Receiver's authority. On January 12, 2024, the District Court appointed the Receiver in a temporary capacity. (Dist. No. 8). In drafting the permanent appointment order, the District Court took the temporary appointment order and removed the following clauses:

> 2. The Receiver's authority hereunder shall be, and hereby is, vested in and extended to (b) all claims, demands, or causes of action of any kind, character or description, regardless of the legal principle or theory upon which the same may be based, whether known or unknown, liquidated or unliquidated, disputed or undisputed, contingent or absolute, accrued or unaccrued, matured or un-matured, insured or uninsured, joint or several, determined or undetermined, determinable or otherwise.
>
> 3. The Receiver is hereby authorized to operate and manage Defendants' business until further order of Court.
>
> 4. The Receiver is hereby authorized to take possession of and, in his discretion, close Defendants' existing deposit accounts and open new accounts in the Receiver's name.
>
> 6. The Receiver is authorized to retain, employ, and pay for the services of individuals or firms selected by the Receiver in his discretion and in consultation with Plaintiff to assist in the performance of the Receiver's duties. It shall not be grounds for an attorney's disqualification that the attorney is affiliated with the Receiver's law firm.

(*Id.* at 2–3). The fact that the Receiver's control over "claims, demands, or causes of action of any kind" was removed from the permanent appointment order is telling. Further, the Court rejects the

argument that the language's removal was inconsequential and is now merely folded into the broad language of the first two clauses. None of the opposition adequately addresses these changes, instead asking the Court to merely look at select portions of the receivership order. The Court is not persuaded by this position and finds the removal of that language indicates the District Court intended to remove the Receiver's authority over the legal affairs of Prime.

Third, the opposition ignores the context in which the Receiver's authority was granted. The District Court describes the purpose of the receivership on numerous occasions across several decisions. For instance, the District Court indicated that "the purpose of the Receiver is to maintain the status quo of the parties and locate missing funds . . . ." January MDO, at *15–16. In its decision dated March 19, 2024, the District Court stated, "the Receiver was appointed to look for Prime Capital's assets to determine if they exist." *Compass-Charlotte 1031, LLC v. Prime Cap. Ventures, LLC*, Case No. 24-cv-00055, 2024 U.S. Dist. LEXIS 47893, at *34 (N.D.N.Y. Mar. 19, 2024) (citing January MDO at 17–18) (hereinafter "March MDO"). "The Receiver is in place to locate any funds owned by Prime Capital, with the hope of understanding and communicating to the Court and the parties the circumstances underlying all of Prime Capital's business, credits, and debts." *Id.* at *98.

Recently, the District Court further reinforced its position, noting "[t]he Court appointed the permanent receiver 'to help answer the million-dollar questions of whether Plaintiff's ICA payment still exists and where it is located.'" *Compass-Charlotte 1031, LLC v. Prime Cap. Ventures, LLC*, Case No. 24-cv-00055, 2024 U.S. Dist. LEXIS 110357, at *12 (N.D.N.Y. Jun. 24, 2024) (citing January MDO, at *18) (hereinafter "June MDO"). On each occasion, the District Court made it clear that the Receiver's purpose is to locate the assets of Prime and ICA payments

of the plaintiff to provide a clear picture of the financial situation to the District Court and all parties involved.

None of the District Court's comments suggest that the Receiver could commence this bankruptcy proceeding. In fact, the District Court specifically stated that "[t]he Second Circuit has 'expressed strong reservations as to the propriety of allowing a receiver to liquidate [an estate].'" January MDO, at *26 (quoting *Eberhard v. Marcu*, 530 F.3d 122, 132 (2d Cir. 2008) (internal quotations omitted)). The Second Circuit in *Eberhard* made it clear that a "receivership should not be used as an alternative to bankruptcy . . . ." *Eberhard*, 530 F.3d at 132 (citing *SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 437-38 (2d Cir. 1987)). The January, March and June MDO decisions, coupled with the lack of specific language permitting the Receiver to file a bankruptcy, indicate the District Court never conferred such authority to the Receiver.

Fourth, the Receiver's past experience as a court receiver should have given him pause before filing this proceeding. The Receiver has noted his "numerous prior receivership appointments" in filings before the District Court. (Dist. No. 37). One such appointment was in the matter of *SEC v. Ryan*, a case with similar facts to the present situation. *SEC v. Ryan*, Case No. 10-cv-00513, 2011 U.S. Dist. LEXIS 160515 (N.D.N.Y. May 3, 2011). In *Ryan*, Mr. Levine was appointed as the temporary receiver for Prime Rate and Return, LLC ("Prime Rate") which was purportedly operating a Ponzi scheme. The order empowering Mr. Levine as receiver specifically granted him the authority to commence and prosecute bankruptcy cases. *Id.* at *4. When he moved for authority to dispose of real property owned by Prime Rate, he "submit[ted] a lengthy, detailed application" which also analyzed the prospect of filing for bankruptcy. *Id.* at *4, 13–14. Ultimately, the court granted Mr. Levine's motion and directed him to submit further briefing on the prospect of a future bankruptcy filing. *Id.* at *17. Yet in the case of Prime, the Receiver did not seek the

District Court's guidance regarding the filing of this bankruptcy. It is unclear why a similar procedure as that in *Ryan* was not followed in the current District Court case.

The Receiver previously noted that he filed this bankruptcy to ensure that the B&R Parties' judgment lien would fall within the 90-day preference period so that he could subsequently move to avoid same. (ECF No. 5 at 2). The Receiver noted in the Third Report of the Permanent Receiver, signed February 7, 2024, that he "reviewed pleadings and has spoken to attorneys for B&R Acquisition Partners, LLC with regard to confirming an arbitration award." (Dist. No. 107 at 3). The judgment was entered by the state court against Prime on February 12, 2024, and the judgment lien attached to the Virginia Beach property on February 28, 2024. (ECF No. 57, Ex. E & F). The Receiver had ample time to seek either authorization from the District Court to file bankruptcy on Prime's behalf or confirmation that the permanent appointment order granted him such authority.[5] He did neither of those things. Even if the Receiver considered the empowering language of the District Court's order to be unambiguous, it is clear that his familiarity with receiverships should have led him to first seek leave of the District Court to file this case. And the filing of the first motion to dismiss should have prompted the Receiver to seek clarification from the District Court, even if only as a precaution. (ECF No. 36).

In his opposition, the Receiver suggests that the question of his authority over the legal affairs of Prime has already been decided by the New York Supreme Court in the matter of *ER Tennessee, LLC v. Prime Capital Ventures, LLC et al.*, Index No. 650231/2024. (ECF No. 77 at 11). However, the Receiver's reliance on this decision is misplaced. The New York Supreme Court decision is primarily concerned with the Receiver's right to defend lawsuits, not initiate

---

[5] The B&R Parties raised a question on this point at the hearing. (ECF No. 83 at 45:26–45:32) ("And the bigger question is, why didn't [the Receiver] go get the authority to file bankruptcy?").

bankruptcy proceedings. (ECF No. 77, Ex. C). In addition, the New York Supreme Court's decision does not include an in-depth analysis of the receivership, instead relying almost exclusively on the January MDO. *Id.* The state court notes that it read the interim appointment order, but there is no reference to or analysis of it in the decision. *Id.* As such, the Court does not find the decision to be persuasive.

In light of the foregoing, the Court finds that the B&R Parties have established the Receiver did not have the authority to file this bankruptcy case on Prime's behalf.[6]

### III.     Trustee's Authority to Ratify

In his statement of ratification, the Trustee claims to have authority to ratify the bankruptcy "in his capacity as the Chapter 7 Trustee to the bankruptcy estate of [Kris] Daniel Roglieri . . . which bankruptcy estate is the sole member of Prime Capital Ventures, LLC . . . ." (ECF No. 66). "Determining authority is a question of state law, and in the case of a limited liability company is governed by the operating agreement, which defines the rights of members." *Green Bridge Capital S.A. v. Shapiro (In re FKF Madison Park Group Owner, LLC)*, Case No. 10-11867, 2011 Bankr. LEXIS 344, at *8 (Bankr. D. Del. Jan. 31, 2011) (citing *In re Am. Globus Corp.*, 195 B.R. 263, 265 (Bankr. S.D.N.Y. 1996) et al.) (internal citations omitted). Prime is a Delaware limited liability corporation (LLC) and a creature of Delaware law. (Dist. No. 13, Ex. N) ("This Agreement shall be governed by . . . the laws of the State of Delaware . . . .").

---

[6] The court notes that prior counsel for Prime raised the same questions concerning the Receiver's authority in a previous motion to dismiss this case. (ECF No. 36). In fact, the Trustee noted his own concern regarding the Receiver's authority at a hearing held on June 12, 2024. (ECF No. 51). It is apparent that the question of the Receiver's authority goes beyond any one party's interest.

Under Delaware law, "[a] person ceases to be a member of a limited liability company upon" the filing of a voluntary bankruptcy petition.[7] 6 Del. C. § 18-304(1)(b); *see also Zachman v. Real Time Cloud Servs. LLC*, 251 A.3d 115 (Del. 2021) (holding that an LLC membership interest terminates when the member files a personal bankruptcy petition and leaves only the economic rights of said interest). The Objecting Parties cite to several cases in support of ratification but fail to cite the most important authority: Prime's operating agreement. (Dist. No. 13, Ex. N). "[A]n LLC operating agreement is the essential contract that governs the affairs of a limited liability company." *In re Extended Stay, Inc.*, Case No. 09-13764-JLG, 2020 Bankr. LEXIS 2128, at *279 (Bankr. S.D.N.Y. Aug. 8, 2020). Prime's operating agreement does not contradict Delaware law, therefore Roglieri "cease[d] to be a member" of Prime upon filing.

Furthermore, Prime's operating agreement makes it clear that the Trustee did not receive management authority upon the transfer of Roglieri's interest in Prime.[8] Section 6.4 of the operating agreement pertains to the involuntary transfer of a membership interest and states the following:

> A . . . bankruptcy of a Member, or other involuntary transfer of a Member's Membership Interest, shall constitute a material breach of this Agreement by such Member. The creditor, transferee, or other claimant, shall only have the rights of an Assignee, and *shall have no right to become a Member, or to participate in the management of the business and affairs of the Company as a Member or Manager under any circumstances* . . . ."

(Dist. No. 13, Ex. N at 8) (emphasis added). This clause mirrors the default rule under Delaware's Limited Liability Company Act. 6 Del. C. § 18-702(a)–(b).

---

[7] Although not addressed by the Trustee, Delaware law also states that an LLC is to be dissolved when it has no remaining members. *See* 6 Del. C. 18-801(a).

[8] At the hearing on the Motion, the B&R Parties raised the argument that the Trustee's ratification is invalid because he did not have such authority on the date that Prime's bankruptcy was filed. *See In re W.R. Grace & Co.*, 366 B.R. 302, 306 (Bankr. Del. 2007); *FEC v. NRA Political Victory Fund*, 513 U.S. 88, 98 (1994). While this argument appears valid, further analysis is unnecessary since Roglieri's membership interest ceased to exist upon the filing of his personal bankruptcy.

Under Delaware law and Prime's operating agreement, the Trustee has no authority to participate in the management of Prime. This includes making the decision to ratify the present bankruptcy case. The Objecting Parties' mere assumption that the Trustee has such authority, without any reference to or analysis of the operating agreement, does not stand up to scrutiny. Therefore, the Trustee's ratification is ineffective.

### IV.     Interest of Creditors

"Section 1112(b)(4) sets forth a non-exclusive list of what constitutes 'cause' to convert or dismiss a case." *Taub v. Taub (In re Taub)*, 427 B.R. 208, 231 (Bankr. E.D.N.Y. 2010). "It is settled that the lack of authority to file a voluntary chapter 11 bankruptcy petition by the party filing it constitutes an independent ground for 'cause' for relief under § 1112(b) of the Bankruptcy Code." *In re 167 W. 133rd St. House. Dev. Fund Corp.*, Case No. 18-12043, 2018 Bankr. LEXIS 2909, at *14 (Bankr. S.D.N.Y. Sept. 25, 2018). Having established that the Receiver did not have the authority to file this bankruptcy, and that the Trustee did not have the ability to ratify said act, the Court now must determine whether dismissal would be "in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1).

To permit this case to continue would be for the Court to sanction misuse of the Bankruptcy Code. Every subsequent act or proceeding in this case would be overshadowed by its impropriety. All work performed and progress made by the parties would be in a constant state of uncertainty as the case's flawed foundation threatens to topple what is built upon it.

Many creditors have already initiated litigation against Prime to recover moneys owed. (Dist. No. 107, Ex. A). There is no risk of Prime flagrantly diminishing its assets in the interim as they remain under the control of the Receiver. The Court is aware that a properly filed bankruptcy

benefits creditors in the aggregate as it allows for a more even distribution of assets in satisfaction of debts owed. However, it is clear to the Court that the current bankruptcy case is untenable.

What's more, it is unclear whether the Court has any discretion regarding dismissal. The Supreme Court has held:

> If the [court] finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition. It is not enough that those who seek to speak for the corporation may have the right to obtain that authority.

*Price v. Gurney*, 324 U.S. at 106. Here, the Receiver clearly did not have the ability to act on behalf of Prime. Further, the Trustee's purported ratification does not cure the deficiency. As such, the Court deems dismissal pursuant to 11 U.S.C. § 1112(b) to be appropriate under these circumstances.

## V.    Stay Pending Appeal

Pursuant to Federal Rule of Bankruptcy Procedure (FRBP) 8007, a party must typically seek a stay of a bankruptcy judgment or order pending appeal in the first instance from the bankruptcy court. Fed. R. Bankr. P. 8007(a)(1)(A). In anticipation of an appeal of this decision and request for a stay pending appeal, the Court has concluded it will not grant such a stay in this case. In determining whether to grant the stay, the Court considers the following four factors:

> (1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated "'a substantial possibility, although less than a likelihood, of success'" on appeal, and (4) the public interests that may be affected.

*Hirschfeld v. Board of Elections*, 984 F.2d 35, 39 (2d Cir. 1993) (quoting *Dubose v. Pierce*, 761 F.2d 913, 920 (2d Cir. 1985)).

First, the moving party would be unable to prove irreparable injury. "[A]n injury compensable by money damages is insufficient to establish irreparable harm." *CRP/Extell Parcel I, L.P. v. Cuomo*, 394 F. App'x 779, 781 (2d Cir. 2010). Here, the only harm that denial of a stay

would cause is the inability to avoid the B&R Parties' judgment lien, which in turn would result in an asset not being available for liquidation and distribution among creditors. Therefore, the only harm that the moving party could claim would be a loss of monetary funds.

Second, it is apparent that a party will suffer a substantial injury if the stay is issued. To grant a stay pending appeal, it must be shown "that a stay will not substantially harm the non-moving party." *In re Hilal Khalil Homaidan*, Case No. 13-46495, 2022 Bankr. LEXIS 2426, at *47 (Bankr. E.D.N.Y. Sept. 2, 2022) (citing *Mohammed v. Reno*, 309 F.3d 95, 100 (2d Cir. 2004)). The B&R Parties have been unable to take action on their judgment lien since the commencement of this case. (ECF No. 5 at 2). By granting a stay pending appeal, the Court would be further frustrating the B&R Parties' right as established in arbitration and a court of law.

Third, it would be extremely difficult for the moving party to persuade this Court that they have a substantial possibility of success. The record is abundantly clear that the Receiver did not have the authority to file this bankruptcy case and that the Trustee had no ability to ratify it. Because the moving party would be less than likely to succeed on appeal, the third factor weighs against granting a stay pending appeal.

Fourth, granting a stay pending appeal would negatively impact public interests. "This factor calls for the court to weigh the public interest in the matter, and to consider and balance the goal of efficient case administration and the right to a meaningful review on appeal." *In re Taub*, 2010 Bankr. LEXIS at *9 (citing *In re Adelphia Communs. Corp.*, 361 B.R. at 349). The Court has already discussed the dangers of permitting or implicitly recognizing a clearly unauthorized bankruptcy case. *See supra* Discussion, Section IV. To grant a stay pending appeal would be to further condone an unauthorized filing, which runs counter to the public goal of the bankruptcy system.

Having found that the four factors could not be satisfied, the Court declines to grant a stay pending appeal. However, the Court will grant a brief stay pursuant to 11 U.S.C. § 105 to permit any aggrieved party to seek a stay from the District Court.

## CONCLUSION

It is clear to the Court that this case should not have been commenced and cannot continue. Now, for the reasons stated herein, it is hereby:

**ORDERED**, that the B&R Parties' Motion to Dismiss Case is granted; and it is further

**ORDERED**, that the bankruptcy case (Case No. 24-10531) is dismissed without prejudice; and it is further

**ORDERED**, that based upon this Decision, the Debtor's Motion for 2004 Examination (ECF No. 48), Motion for Turnover (ECF No. 53) and the Joint Motion for Order Approving Stipulation (ECF No. 61) are moot; and it is further

**ORDERED**, that, pursuant to 11 U.S.C. § 105, a stay of all proceedings against Prime is effective until August 2, 2024, at 4:00 p.m., to provide any aggrieved party time to seek a stay from the District Court.

Dated: July 23, 2024
Albany, New York

>                   */s/ Robert E. Littlefield, Jr.*
>                   Robert E. Littlefield, Jr.
>                   United States Bankruptcy Judge